And we have Mr. For it for the appellant. Thank you, Your Honor. Nicholas part of Levy and Kaczynski. On behalf of the. The two plaintiffs. Henry Wasek and Eric McIntyre here, who are objectors. I think I'll refer to them to the, to the settlement. This involves a settlement of a securities class action that was approved by Judge Ramos, Southern District of New York. Which involved just approved both approval of the settlement and certification of a class of investors and class certification and approval of the settlement is only appropriate. Really, it's only appropriate where the class representatives of adequately represented all the class members and that the notice due process. As reflected by the inadequate notice have been have been observed and neither of those are present here. The important facts that you know the facts of the case are complicated, but can be simply stated for the purposes of this appeal. Patriot National was a insurance service provider that went public in January 2015 at $14 per share and filed for bankruptcy in January 2018. In the meantime, multiple class actions have been settled had been filed against against Patriot National and the other other defendants. Importantly, they asserted three separate categories of claims. They asserted claims arising under the Securities Act of 1933 for investors in the IPO who bought at $14 a share. They asserted federal claims under the Securities Exchange Act of 1934 throughout the class period, relying on misrepresentations in connection with the IPO and thereafter. And there were claims asserted in a class action filed in Delaware State Court, asserting Delaware state law claims arising out of a failed takeover offer in 2016, June to November 2016. The settlement releases all of those claims. However, it only compensates the claimants under the Exchange Act and gives no compensation to the Securities Act claimants or the claimants under Delaware law. Let me let me ask you about that for a moment. I understand your argument, but in the particular facts of this case, your argument is those additional claims were had some additional value. The district court said it's one hundred six million dollars worth of benefit, a value where you say the maximum recovery was really one hundred ninety five million. Right. Isn't that the dispute here? Well, there was. Let me let me finish my question. OK, because that's that's my understanding of what you're arguing is that there was, you know, eighty nine million dollars of additional value based upon these other claims. But the facts of this is you had a bankrupt company where the insurance, the maximum was 30 million. It could have been over 16 million. So why wouldn't this still be a fair and reasonable result, given what the practical amount of money was that was left in connection with this particular company? Well, your honor, with respect, that's confusing the general assessment of the fairness of the settlement versus the adequacy of the representation. And those are two independent inquiries that this court recognized in payment data. And I don't believe the district court with respect. So you don't think that you don't think the settlement was unfair based upon that? Is that what you're arguing? You're just arguing the adequacy out there. You're arguing both. Well, your honor, I think the two I think the inadequacy of the settlement, particularly the treatment of the settlement classes under the settlement shows the inadequacy of the representation. And again, that is what this court did in literary works and in payment data, which is that the unfairness and super spuds to that the sheer inadequate unfairness of the structure of the settlement shows the inadequacy of the representation. So the two are to some degree combined. But this isn't a question of, you know, six point five million dollars just wasn't enough. I mean, that would be something in the discretion of the court, which the court took under consideration. We made that objection, but that's not subject to this appeal. The problem here is that you have people and we played out a very specific example of investors who purchased in the IPO, who sold their shares at a loss, who therefore have damages under the Securities Act, statutory damages, and they receive those claims are released and they get zero compensation. And I guess I'm a little confused. I thought the plan of allocation was determined. They were entitled to thirteen dollars and ninety five cents per share. So I put those from both experts. So I'm a little confused when you say, you know, that there was additional compensation. Why isn't the way this the plan of allocation was done really brought that argument? Well, the plan of allocation doesn't reflect that. Thirty nine dollars and ninety five is only for those who held their shares all the way to the end of the class period to January twenty eighteen. People who bought shares in in Patriot National in the IPO January fifteen twenty fifteen and sold their shares before October second of twenty fifteen received zero compensation until they settled. That's very clear in the plan of allocation on sixty seven trading days during that time period. Investors sold shares and they have claims and losses that are recoverable under the Securities Act and those claims are released and they get zero compensation. And incidentally, the class representatives did not are not members of that class. They did not purchase shares during that period or sell their shares in that period. So they had zero incentive to pursue those claims. That is the problem here. That is the fundamental inadequacy of the representation. Do you know what percent the people who you say got nothing under the Securities Act are of the people who did get a recover under the settlement or Securities Act damages? What's the ratio? The short answer is no. We know we estimate because we can only do estimates at this point because we don't have full access to the to the whole class records. We estimate our expert applying a pretty well accepted model. Estimated two million shares were traded during the during that period. Out of the approximately 14, 15 million shares, I think that were that were in the IPO. So we know a substantial number. We don't know how many of those still help with that. They still held and participate in the settlement as part of the 75 class. But as literary works makes very clear, that's not a solution. The problem, just because you may have people who have claims in both classes, doesn't cure the structural conflict between these two claims. So your argument is that there should have been a subclass of these Exchange Act claim individuals. That's essentially your argument. Well, all the Securities Act claims, if you are. Yes. The Securities Act and arguably the Delaware law claimants and the Exchange Act claimants should have had separate representation to pursue. Well, wait a second. The Delaware that were we plaintiffs that had Delaware law claims, right? It wasn't some of the plaintiffs had those claims, right? Two out of the three had. Why was there any issue there? Why wouldn't they be perfectly aligned with the Delaware? Sorry, I didn't mean to cut you off. The once again, as literary works and payment data make clear, it's not enough that you happen to have claimants with a foot in both camps because you still have this risk that you trade off one claim versus the other when you're negotiating a settlement. I don't have some indication that they were antagonistic. It's not it's not as if if there's multiple claims, you have to every claim necessarily has to be separately represented. Right. You're not arguing that it has to be some indication of it, that it's antagonistic. Right. I think you need I think it needs to go. I think I think the word, the Supreme Court in Amcam, it's like fundamental importance to the case. So, yes, if there are minor differences on the margin, then I don't think there would be separate representation. But here, Delaware law, they seem to receive no if no recognition whatsoever in the efforts to settle this case. They were never being asserted by the by the members here. And there appear to be no effort to negotiate on this part. If I can quickly, I have five seconds, but quickly talk about the notice. I mean, this floor flows through the notice, which was there is no way of anyone to know if you held Securities Act claims that they were being released for no consideration. That is not mentioned at all in the notice. And again, that was sort of a fundamental flaw recognized by this court, the super spuds, which I think is directly on all fours here. And similarly, the amount of the claims we have a fundamental issue, which we addressed in our briefing about whether the amount of the potential recovery of trial needs to be disclosed in the notice. And I would submit it's very difficult to assess whether you should participate in a, if at all possible, to assess if you should participate in a class action or not. And meaningfully opt out if you don't know what you're giving up, which is the value of what you're giving up. And here we just had a very plain vanilla boilerplate statement that people disagree about how much they could be, which tells class members nothing. And I have reserved some time for rebuttal unless you have questions for me further on this, your honors. I'll wait till rebuttal time. All right, great. Thank you, Mr. Port. Mr. Polakoff, on behalf of ODS Capital LLC. Yes, may it please the court, Jacob Polakoff for plaintiffs at police. The securities fraud litigation concerned Patriot National, which Judge Bianco noted was a company in bankruptcy with limited wasting DNO insurance. And that was sought by various creditors and litigants. There are an extensive arms length court ordered mediation plaintiffs appellees reach an excellent result for the class, especially considering the collectability risks. Only $16 million of DNO coverage remained at the time of final approval. The mediators, including Mr. Friedman, who was added to the mediation specifically to address insurance coverage issues, agreed that these were the only funds available for resolution of the case. And that the $6.5 million settlement was the most that could have been obtained, as stated in Mr. Myers declaration. In this court's in Ray Drexel Burnham Lambert group decision, another case where there was a limited fund available to satisfy all claims. The court noted that prolonging the negotiation process will increase the defendants litigation costs with a consequent decrease in the size of the fund. Similarly, here, if litigation continued or the settlement was not approved, there was a real chance of zero recovery for the class. In approving the settlement, Judge Ramos considered this issue and others, including that the media, the settlement was reached through an arms length court ordered mediation. The strong evidence of fairness that can be inferred from the positive reaction of the class to the settlement, including the endorsement by some of the largest shareholders. The reasonable percentage recovery and the litigation risk. Judge Ramos asked rhetorically, how much more could they have gotten. The district court did not abuse its discretion in finding that the release in the plan of allocation were fair, reasonable and adequate. The release is proper under Second Circuit law as the release conduct and unpledged claims arise from the same or similar conduct alleged in the action as discussed by the court in in Ray American Express Financial Advisors and Walmart Stores v. Visa USA. What do you make of the assertion about the fact that folks who sold their shares during the class period aren't included in the settlement? Sure. First of all, I don't think that that that is accurate. Specifically about the Securities Act alleged by the Securities Act damages alleged by objectors before the first corrective disclosure. The Second Circuit has a general rule, quote, a price decline before disclosure may not be charged to defendants. That rule is pronounced in Ackerman v. Oryx Communication and was reiterated in McMahon v. Warehouse Entertainment. There is no disclosure between October before October 5th, 2005. The objector's argument ignores the negative causation provision of Section 11B. So there is a year. Let me just make sure I understand what you're saying in response to Judge Wesley's question. You're you're saying there wasn't some subclass of investors who only who only had Securities Act claims when this settlement are getting zero. You can see that there's some group of people. I don't know how big, but that because they had only that they were going to get zero because when they bought the shares and because of the nature of their claims. Well, there were some shareholders that purchased in the IPO and and sold before the first corrective disclosure. But but again, that just because the share price may have been lower on that date does not mean that those that that the loss can be assigned to the defendants. And that's the negative loss causation provision of Section 11B where a defendant only needs to show that the decline in market value is unrelated to the material misstatements or emissions to escape liability in whole or in part. Are you saying that no shareholder who had a Securities Act claim get is excluded from recovery, but the only excluded people are people who did not have a Securities Act claim? Is that your point? I'm a little unsure of your question. The position that you were talking about sales before the disclosure. Right. So are you saying nobody, no shareholder who is excluded from the class had a successful a potentially successful Securities Act claim? No, there aren't any shareholders excluded from the class. Those share those shareholders that did have Securities Act claims are paid equitably based on their recognized loss during under the plan of allocation. And our expert analyze the actual stock movements correlated with relevant public information. The argument your adversary makes, if I understood it right, is that some Securities Act claimants get nothing. Are you disputing that? I am not disputing that. I'm saying that that we're not disputing that at all in our experts plan of allocation, which was reviewed by Judge Ramos. And he had the discretion to weigh that plan of allocation and did so in approving the plan. The the any shareholders who purchased in the IPO and sold before October 5th of 2015 did not have Securities Act damages. Let me just say some people didn't have a claim, but how about those who did have a claim? Sure. Sure. Securities Act shareholders who sold any time after the first disclosure on October 5th, 2015 through the end of the class period when the company went bankrupt do recover under the plan of allocation. They do. They do. Yes, they do, sir. And and how can you spell that out a little bit? How do they participate in the plan? Because the argument is they get nothing under the plan. No, I don't think that is Mr. Porat's argument. Mr. Porat's argument is that Securities Act shareholders or purchasers in the IPO that sell before October 5th get nothing. And that is true. And Mr. Porat said that there were 67 days that the that the stock traded below the IPO price before the first corrective disclosure. That's 67 days out of nine months. During the vast majority of the time, the security traded above the IPO price as much as 35 percent above the IPO price. So so our position and our expert position, which was reviewed by Judge Ramos, is that there's no Securities Act damages before the first disclosure during the days when they might have had a claim. They have no damages. Right. There was no damage. They had no damages before the first corrective disclosure. And while you're answering me, could you say a word about his argument that the notice was defective? Absolutely. Your Honor. So the notice we thought was adequate. It comported with all requirements. It fairly apprised the class members of the terms of the proposed settlement and of their options in accordance with this court's Wal-Mart Wal-Mart Stores v. Visa USA decision. Contrary to Mr. Porat's argument, the notice in paragraph 28 specifically provided a detailed description of the claims and potential claims being released. And that's a joint appendix 2176. And in terms of the lack of an agreement on the average amount of damages, your position is that it complied with the P.S. L.R.A. when there is no agreement to simply disclose that there's no agreement. That is correct. And that's the courts in Bank of America corporate corporation securities derivative and Arisa litigation case. Unless there are any other questions, I'll continue. I think I'd like to quickly touch on the release, which was proper under Second Circuit law. The objectors have now admitted the propriety of the release is not in dispute. They admitted that on reply at page 20. They also argue the factual similarities between the claims to the J.P.M.L. They're now focusing. They seem to now be focusing on adequacy of representation, but their authority is all distinguishable from this case. For example, the national super spuds case, which objectors just reference as being on all fours. The dispute there concerned claims released related to a type of futures contract that the class representatives did not possess. As explained in footnote seven of that case of that case, the claims released there depended not only on a different legal theory, but proof of different facts. The Second Circuit has often distinguished that case. It's distinguishable here where objectors are only arguing about the type of claim, not the category of security or differing facts. I think we've covered the plan of allocation quickly to touch on the Delaware claims. Delaware claimants recover under the plan of allocation. Those residual claims are highly speculative and likely derivative anyway. And the settlement was well received by the class. This court in Wal-Mart stores stated that the favorable reaction of the overwhelming majority of class members to the settlement is perhaps the most significant factor in our Grinnell inquiry. There is only one objection here. There were two exclusions, one of which had a gain. The settlement was supported by some of Patriot's largest shareholders, including the largest non-chairman shareholder with a $9 million loss. And I see my time is up, but also some former clients of objectors counsel. So we would ask that the court affirm. Thank you very much, Mr. Polakoff. Mr. Port, you have two minutes for rebuttal. Thank you, Your Honor. First of all, Mr. Polakoff has made great reliance on the response of the class. Of course, if the notice is inadequate and the response of the class gets is about no weight. This is called the super spuds. And as a matter of logic, so as we would allege, as we argued that the notice was inadequate, you can't put any store whatsoever on the response of the class. And likewise, a mediator, as this court has recognized in payment data and literary works, does not cure the fundamental structural flaws of intention that may exist. So and if you look at the description of the claims and the notice on J.A. 2176, you won't see a single mention of the Securities Act or Delaware law claims. So we think it's it's it's disingenuous to suggest that it was a full description of the claims that were involved in this case. It is a long, bewildering sort of paragraph that is not does not mention anything about the existence of different claims or stronger claims in relation to the IPO. The real question here, Your Honor, is there is no doubt. And I don't think Mr. Polakoff disputed that people who bought in the IPO and sold their shares in the example sale March 31st, 2015, which, by the way, is after the day after Patriot National filed its annual report for 2014. So new information did come into the market. The market did react. They did not choose to to choose that disclosure of the annual report as a corrective disclosure under the Securities Exchange Act. There are specific requirements under the Exchange Act as to what qualifies as a corrective disclosure. You do, you know, you get into questions of statistical significance. None of those concerns apply in the Securities Act. So they just accepted this idea of negative causation. Therefore, it means that losses under the Securities Act are the same as they are under the Exchange Act. That is absolutely not true. Defendants have a heavy burden under Ackerman, and they would have to show that any decline in price between January 2015, the IPO, and October 2015 had no relation whatsoever to the allegations in the misrepresentation registration statement. Something they could not have done in this case, I would submit. But class representatives here had no incentive to push back on that allegation because it would have not generated any additional recovery to us, to them. So here you had hundreds of thousands of dollars, millions of dollars of damages suffered during that period of January to October 2015. And they were not compensated at all in the settlement. And they were just simply that, again, super spuds is squarely on all fours, that no matter how great the benefit to the compensated members of the class, that benefit can't be bought by sacrificing uncompensated claims of other class members. And that is precisely what is happening. Thank you very much to all of you. We will reserve decision. Thank you very much.